The next case today is Migrant Health Center, Inc. et al. v. Commonwealth of Puerto Rico, appeal number 191336. Attorney Lugo. May it please the court, Carlos Lugo on behalf of Appellant Commonwealth of Puerto Rico. I think most of the issues in this appeal, the only issue is regarding the application, the effective date of the new PPS rates, is a question that we have already discussed on the merits. And if there are no more questions from the court, I would like to address very briefly the appropriations clause issue that Atlantic Medical has raised in its brief. Yes, please proceed. We appreciate your getting directly to what's left. In our brief, we stated and we reiterate here that there's no appropriation clause issue here because the appropriations clause itself, they may have another type of argument, but an appropriations clause argument they don't have because what the appropriation clause prohibits is for an officer of the United States to make a certain appropriation outside of what Congress has established. And in this case, as they allege, they allege that they will be forced to use the funds that they have been paid under Section 330 to compensate for the failure to be paid under the Medicaid funds. That does present an issue, but it's another legal issue. It's not an issue under the appropriations clause. Since they have discussed this only under the appropriations clause, then our position is that they don't have any claim under that clause. Thank you. That will be all. Thank you very much for your time. Thank you. Attorney Lugo, if you would mute your device, and Attorney Graham, please proceed. Again, I'm Robert Graham for the Appellees in 1936. I suppose that when Ms. Bacon and I divided up the time on the consolidated appeals, we had anticipated that she was going to take time to do a rebuttal on the appropriations clause issue. And now, of course, it's come up in this appeal, and I have all of the time on this appeal. Mr. Graham, we've heard your arguments in what is the second hearing of the two appeals. Is there anything you have left unsaid? We understand you're deferring as to the appropriation clause to your co-counsel. Is there anything more you want to say? Just briefly, if only to sum up, I think that a lot of the issues about the equitable concerns here that certainly Judge Lopez raised in the prior argument apply with equal, if not greater, force here. The notion that the commonwealth should be relieved of any of its obligations for any period of time, based on equitable principles, simply, it just doesn't hold any water. I think it depends what we mean by equitable principles. So one, equity has a lot to it. So one possibility is the equity is the grand evaluation of what kind of payments Puerto Rico should be making, and I can see why that is a problematic use of equity here. There was a reference in the last round by Ms. Bacon to evidentiary problems going back earlier in time, but that might be a stronger form of the argument, and that's why I'm still a little bit concerned about what was actually argued to the district court here with respect to the 2014 date, because if the district court was of the view that, well, I don't quite know what the evidence is as to what's going to be going on those earlier years, so I'll set it at 2017, that doesn't seem like an unusual use of equity to just say it looks murky there, so I'm not going to give you an injunction for what's murky. I'm glad that you brought that up, and I think just to clarify what Ms. Bacon said about the lack of evidence, that was, as I understood what she said, it was with respect to rate setting that, you know, rather than going back further and further to try to find a date. But why would I set, if I was a district court, why would I set a date subject to injunctive relief when I didn't have any consequence that there would ever be evidence to support a rate that could go back to that date? That doesn't seem like a crazy thing for a district court to do, to just say, well, until you show me that it's going to be practical, I'm not going to make an injunction on that date. And that's fine, but that's not the issue here. Okay. I think what happened here is there was going to be a rate set, and it wasn't a question of the adequacy of the evidence for the rates as between 2014 and 2017. Let's not get confused, if the court were to say, I'm going to cut off the that would be what you would call an exercise of discretion, consideration of equitable principles. You know, just as a practical matter, it's not going to be worth the time or money for anybody to go back any further than this date. But that's not what the judge did. What the judge said was, I'm going to go all the way back to 2014 to do reconciliations, but I'm only going to apply the correct rates as of 2017. That's what happened here. And that's not, that's not. He talked about efficiency, finality, administrative burden. I mean, it seems he, the very factors that Judge Barron was mentioning seemed to be important to him in making that judgment. It was that kind of, he portrays it as just a practical judgment to be made, right? Yes, but. It was efficiency, finality, burden for the Commonwealth, not for the court. That's what, that's what the order reads. And in fact, that order was a cut and paste out of the Commonwealth's brief before the, before the special master, literally a cut and paste. So, but even, you know, even if those are legitimate concerns for the court, it doesn't say it, it's, it's still inequitable to do what the court did because we have, because really the bulk of the work, the bulk of the data is going to be in the reconciliation, not in the rate setting. And what we have, what we have here is the court saying we can get to an updated rate, but we're not going to apply it for the entire time for, for, for, to which it would, to which it should apply. And that is to our client's detriment. Well, what, can I just ask you one, Paul? What good is the date for the rate absent reconciliation? Is there a relationship between those two things? In other words, if you couldn't come to reconciliation, would there be any practical reason to establish an earlier date for the rate? Well, I guess it depends on what you, what we mean by reconciliation. Um, if you were talking about it, I'm sorry, what, whatever you meant when you were talking about it, well, I mean, I, I, I think that the, if it, right. The only reason that we have the, the, the effective date of the rate is important is for the purposes of doing update payments, but that raises the concern, which is that if you didn't make a showing that you were going to be able to establish the reconciliation for that period, then it seems not unreasonable for district court to say, well, why would I set the date for that period for the junction? I don't even know what's going to mean anything, but he, but he ordered the reconciliation to go back to that date. Let's not get confused here. He didn't order the reconciliation, but still only to your benefit. There's no reason for you to complain. In other words, you got the benefit of an order that they're going to start the reconciliation with respect to when the date is going to start for now. All you've given me is 2015, 2016 data. So I don't know reconciliation is going to matter for 2014. So I'll set the date of 2017. If you then can show in reconciliation, there's a reason to set it earlier, come back and seek modification. What would be wrong with proceeding that way? It's, but that's not how it played out. But as I, as I indicated in the, in the earlier argument, the horse was setting the date and then determining what data to present. So we never really had an opportunity to say that, to demonstrate that, that if we took 2012 and 2013, that we would have a different rate. One last on this. If you, if, if my reconstruction of what happened were correct, since there is an order for you to do reconciliation starting in 2014, would there be anything that would preclude you seeking a further modification to have it set at 2014? If you had the new data under the order of the district court, I don't read the district court to preclude that. Um, didn't the district court deny your motion for reconsideration of this setting at the date? But that's, that's pre the reconciliation data on 2014. But it could have been viewed as cutting off any ability to present. I'm just saying, if we clarify, if we understood the district court merely to have said, given what you presented me now, I've ordered you to do that work about 20 for the 2014 date, go back. But in terms of the date that I can confident I can set it's 2017, nothing would then preclude you depending on what was shown to go back to the district court to make a showing for the earlier date. Right. But then we run into law of the case problems. We run into appealability issues. But that, that, but that just makes the point, which is the district court says, well, you know, that's on you, not me. I mean, you got to make your showing when you make it. And again, that's my worry is that what is being done here is a bit of an end run around law of the case. And I can't see that because we had an order. We, we had a question presented by the special master. What should be the effective date of the new rates? We said it should apply throughout the reconciliation period. Commonwealth argued it should only start as of January, 2017, because this was in 2016 that they filed their brief. And so what winds up happening is before we even get to the point that we're, that we're doing any rate setting before we're even presenting any, any evidence, we have a ruling. I got, thank you. I got, I understand what you're saying. Anything else, Mr. Graham? I think that we've covered about as much ground as we're going to cover. Thank you very much. Thank you. That ends argument in this case. Attorney Graham, Attorney Bacon and Attorney Lugo may disconnect from the meeting.